1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

9
10
11
12
13
14

| WILLIAM BORTON and SUSAN BORTON, | ) | 3:10-CV-00253-RCJ-(VPC) |
| Plaintiffs, | ) | |
| v. | ) | **ORDER** |
| NEW UNITED MOTOR MANUFACTURING, INC., | ) | |
| Defendant. | ) | |

15      Plaintiffs William Borton and Susan Borton (collectively, "Plaintiffs") sued Defendant

16   New United Motor Manufacturing, Inc. ("NUMMI") for refusing to immediately pay Mr. Borton's

17   interests in a pension plan to Ms. Borton pursuant to a domestic relations order.  Presently

18   before the Court are Plaintiffs' Motion for Preliminary Injunction (#3) and Defendant's Motion

19   to Dismiss (#10).  Both motions have been fully briefed (#11, 16, 17, 21).  The Court heard

20   oral argument on August 2, 2010.  The Court now issues the following order.  IT IS HEREBY

21   ORDERED that Defendant's Motion to Dismiss (#10) is GRANTED IN PART AND DENIED

22   IN PART and Plaintiffs' Motion for Preliminary Injunction (#3) is DENIED.

23   **I.      BACKGROUND**

24          **A.      Mr. Borton's employment with NUMMI and deferred compensation plan**

25          The facts, based on allegations in the complaint, are as follows.  Mr. Borton began

26   employment with NUMMI in 1984.  (Compl. (#1) ¶ 7).  NUMMI was a joint venture between

27   General Motors Corporation ("GM") and Toyota Motor Corporation ("Toyota").  (*Id.* at ¶ 8).

28          Mr. Borton eventually became a senior executive and enrolled in NUMMI's Executive

Deferred Compensation Plan (the "Plan"). (*Id.* at ¶ 11). Under the Plan, in general, no benefits or interests in the plan may be assigned or alienated. However, the NUMMI Deferred Compensation Committee (the "Committee") would "honor a court order regarding the payment of alimony or other support payments, or the establishment of community property or other marital property rights, to the extent required by law." (Rest. of the NUMMI Executive Deferred Compensation Plan § 8.2 (Jan. 1, 2008), attached as Ex. 3 to Compl. (#1)). The Plan also states that the Committee, at its sole discretion, may accelerate payments under the Plan "[i]f the acceleration of the time or schedule of a payment under the Plan, or the payment to be made under the Plan, is to an individual other than the Participant, or if the payment under the Plan is to be made to an individual other than the Participant, and is necessary to fulfill a domestic relations order." (*Id.* at § 6.3(d)(i)).

The Committee is appointed by the President of NUMMI and serves at his pleasure. (*Id.* at § 7.1). The Committee is designated the "Plan Administrator." (*Id.*). NUMMI will indemnify members of the Committee with respect to their Plan responsibilities except in cases of gross negligence and wilful misconduct. (*Id.* at § 7.4). NUMMI retains authority to direct the Committee to make payments to a third-party trust and to make elections altering the time and manner of Plan distributions. (*Id.* at §§ 6.3, 8.1).

In May 2008, Mr. Borton went to work as vice president and plant manager of the Kyoho Manufacturing California plant, a supplier of NUMMI. He still received his paycheck from NUMMI. (Compl. (#1) ¶ 12). In the spring of 2009, NUMMI asked Mr. Borton to retire from NUMMI and continue to work directly for Kyoho Manufacturing California. (*Id.* at ¶ 13). In April 2009, Vice President Ernesto Gonzalas Beltrain assured Mr. Borton that his interests in the Plan would continue to be protected by the Plan's insurance. Based on this representation, Mr. Borton agreed to retire and accept his payout from the Plan in installments rather than in a lump sum. Mr. Borton's interests in the Plan, however, were not protected by the Plan's insurance. (*Id.* at ¶ 14). On April 29, 2009, Mr. Borton signed a retirement agreement with NUMMI memorializing his agreement to accept installment payments. (*Id.* at ¶ 15). As part of the agreement, Mr, Borton agreed to waive all his claims against NUMMI and

2

1    to mediate or arbitrate any disputes arising from the agreement. (Letter ¶¶ 5, 7, 16, attached
2    as Ex. 4 to Compl. (#1)).

3        In June 2009, GM declared bankruptcy and withdrew from the NUMMI venture. (*Id.* at
4    ¶ 16).

5        On August 24, 2009, Mr. Borton delivered a letter to NUMMI Vice President Robert
6    McCollough requesting his plan assets be distributed in a lump sum. Mr. McCollough
7    informed Mr. Borton that his plan assets were uninsured. (*Id.* at ¶ 17). On August 26, 2009,
8    NUMMI President Kunihiko Ogura confirmed that Mr. Borton's assets were uninsured, but told
9    Mr. Borton not to worry. Over the next several weeks, Mr. Ogura and other NUMMI executives
10   repeatedly informed Mr. Borton that NUMMI would pay him all monies he was entitled to under
11   the plan. (*Id.* at ¶ 18).

12       On August 27, 2009, Toyota announced the end of its contract with NUMMI, effective
13   March 31, 2010. (*Id.* at ¶ 19).

14       **B.    Plaintiffs' separation and the domestic relations order**

15       On January 26, 2010, Plaintiffs filed a joint petition for separate maintenance in state
16   court. (*Id.* at ¶ 20). On February 2, 2010, the state court entered a decree of separate
17   maintenance and order of the court adopting the parties' settlement agreement. (*Id.* at ¶ 21).
18   The settlement agreement stated that Ms. Borton "shall require a lump sum distribution to her
19   of the entire balance and holdings of" the Plan "and that a Domestic Relations Order providing
20   for such distribution will be tendered to the Court for approval and signature as soon as
21   possible." (Marital Settlement Agreement § 3.9, attached as Ex. 1 to Notice of Settlement,
22   attached as Ex. 8 to Compl. (#1)). On February 18, 2010, the state court entered a domestic
23   relations order assigning Mr. Borton's interest in the Plan to Ms. Borton and ordering
24   distribution to Ms. Borton in a lump sum. (Domestic Relations Order, attached as Ex. 9 to
25   Compl. (#1)). The domestic relations order stated that nothing within it should be construed
26   to "provide Alternate Payee any type or form of benefit, or any option not otherwise available
27   under the Plan." (*Id.* at ¶ 6).

28   ///

3

1    On February 22, 2010, the domestic relations order was sent to the Committee for
2    approval and distribution. (Compl. (#1) ¶ 24).  On March 3, 2010, the Committee's counsel
3    concluded that it could give effect to the domestic relations order once it was entered in
4    California by a California court.  (*Id.* at ¶ 25).  On April 6, 2010, the Superior Court of Alameda
5    County, California, filed a notice of entry of the sister-state judgment.  (*Id.* at ¶ 26).  On April
6    16, 2010, the Committee's counsel advised Plaintiffs that the sister-state judgment had been
7    forwarded to the Committee and that the Committee may, at its sole discretion, decide to make
8    no payment to Ms. Borton.  (*Id.* at ¶ 29).

9    Mr. Borton then learned that NUMMI was attempting to liquidate all its personal
10   property and take measures to cease its operations.  NUMMI has ceased communications with
11   Mr. Borton.  (*Id.* at ¶ 32).  According to NUMMI, the Committee has not yet decided whether
12   or not to pay Mr. Borton's interests in the Plan in lump sum to Ms. Borton.  (Mot. to Dismiss
13   (#10) 2:13–15).

14   On April 28, 2010, Plaintiffs filed a suit against NUMMI in this Court.  (Compl. (#1)).
15   They asserted claims for breach of contract, breach of the covenant of good faith and fair
16   dealing, negligent misrepresentation, fraud, and unjust enrichment.  (*Id.*).  They sought
17   injunctive and declaratory relief, compensatory and punitive damages, and attorney's fees and
18   costs.  (*Id.*).

19   That same day, Plaintiffs filed a motion for a temporary restraining order.  (Pls.' Mot.
20   for TRO (#2)).  On May 24, 2010, the Court denied the motion for a temporary restraining
21   order because, inter alia, the movants failed to show immediate and irreparable injury before
22   the adverse party could have a chance to be heard.  (Order (#14)).

23   **II.    LEGAL STANDARD**

24   **A.    Motion to Dismiss**

25   A court must dismiss a cause of action that fails to state a claim upon which relief can
26   be granted.  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule
27   12(b)(6) for failure to state a claim, dismissal is appropriate when the complaint does not give
28   the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  *See*

4

1    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must state the grounds

2    upon which a plaintiff is entitled to relief. A mere recitation of the legal elements of a cause

3    of action is insufficient. *Id.*

4         In considering whether the complaint is sufficient to state a claim, the court will take all

5    material allegations as true and construe them in the light most favorable to the plaintiff. *See*

6    *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not

7    required to accept as true allegations that are merely conclusory, unwarranted deductions of

8    fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

9    (9th Cir. 2001).

10        "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are

11    presented to and not excluded by the court, the motion must be treated as one for summary

12    judgment under Rule 56. All parties must be given a reasonable opportunity to present all the

13    material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The court may consider

14    "documents attached to the complaint, documents incorporated by reference in the complaint,

15    or matters of judicial notice" without converting a 12(b)(6) motion to dismiss to a motion for

16    summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A copy of

17    a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

18    Fed. R. Civ. P. 10(c). A document is incorporated by reference in a complaint if the complaint

19    extensively refers to the document and the document forms a basis of a claim. *Ritchie*, 342

20    F.3d at 908. "[O]n a motion to dismiss a court may properly look beyond the complaint to

21    matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for

22    summary judgment." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986),

23    *abrogated on other grounds*, *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

24       **B.      Motion for Preliminary Injunction**

25        "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed

26    on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

27    that the balance of equities tips in his favor, and that an injunction is in the public interest."

28    *Winter v. Natural Res. Def. Council, Inc.*, __ U.S. __, 129 S. Ct. 365, 374, (2008); *see Am.*

*Trucking Ass'ns*, *Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (holding that prior Ninth Circuit decisions that applied a lesser preliminary injunction standard than *Winter* are no longer controlling).

Whereas a prohibitory preliminary injunction maintains the status quo, a mandatory injunction does not and is disfavored. *N.D. v. Haw. Dept. of Educ.*, 600 F.3d 1104, 1112 n.6 (9th Cir. 2010). In general, movants are not entitled to a mandatory preliminary injunction unless very serious irreparable harm will result and the facts clearly favor the movant. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009); *Transwestern Pipeline Co. v. 17.19 Acres of Prop. Located in Maricopa County*, 550 F.3d 770, 776 (9th Cir. 2008).

## III.   ANALYSIS

Plaintiffs move for a preliminary injunction requiring NUMMI to pay Mr. Borton's Plan interests in a lump sum to Ms. Borton or to pay them to the Court. NUMMI move for dismissal or summary judgment. Plaintiffs ask for leave to amend, should their claims be dismissed. The Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), preempts all of Plaintiffs' claims except for unjust enrichment. However, Plaintiffs should be given a chance to amend their complaint to plead their claims under ERISA. Plaintiffs' have not established their right to a preliminary injunction.

### A.   Motion to Dismiss

#### 1.   ERISA preemption

ERISA establishes a comprehensive scheme for the enforcement of rights in employee benefit plans. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). ERISA incorporates the principle of conflict preemption: under section 514(a), the relevant provisions of ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" subject to several exceptions. 29 U.S.C. § 1144(a). "A 'law 'relate[s] to' a covered employee benefit plan for purposes of § 514(a) 'if it [1] has a connection with or [2] reference to such a plan.'" *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324 (1997) (quoting *District of Columbia v. Greater Wash. Bd. of*

6

*Trade*, 506 U.S. 125, 129 (1992)).  "Where a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation . . . that 'reference' will result in pre-emption."  *Dillingham*, 519 U.S. at 325.

Courts should not employ "uncritical literalism" when deciding whether a state law has a connection to an ERISA plan.  *Id.*  To determine whether a state law has a connection to an ERISA plan, courts should consider the objectives of ERISA and the effect of the state law on ERISA plans.  *Id.*  Courts should assume that Congress did not intend to bar state action in areas traditionally regulated by states unless that purpose is clear.  *Id.*  Congress intended ERISA to preempt state law in three areas: (1) laws that mandate employee benefit structures or their administration; (2) laws that bind employers or administrators to choices or that preclude uniform practice so that they regulate an ERISA plan; and (3) laws that provide an alternate enforcement mechanism for obtaining ERISA plan benefits.  *Ariz. State Carpenters Pension Trust Fund v. Citibank* (*Ariz.*), 125 F.3d 715, 723 (9th Cir. 1997).  "'The key to distinguishing between what ERISA preempts and what it does not lies . . . in recognizing that the statute comprehensively regulates certain relationships: for instance, the relationship between plan and plan member, between plan and employer, between employer and employee (to the extent an employee benefit plan is involved), and between plan and trustee.'"  *Id.* at 724 (quoting *Gen. Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521–22 (9th Cir. 1993)).

Section 502(a) provides a civil enforcement scheme.  *See* 29 U.S.C. § 1132(a).  "A state cause of action that would fall within the scope of this scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme, even if those causes of action would not necessarily be preempted by section 514(a)."  *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005).  "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  *Davila*, 542 U.S. at 209.

///

7

1   Furthermore, a conflicting state-law claim that could have been brought under section

2   502(a) and does not implicate a legal duty independent of ERISA, is completely preempted.

3   *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009) (citing

4   *Davila*, 542 U.S. at 210).  Complete preemption not only acts as a federal defense to state-law

5   claims that conflict with ERISA's relevant provisions, but also automatically converts such

6   claims into federal claims for the purpose of establishing federal question jurisdiction.  *Id.* at

7   945.

8          a.     **Plaintiffs' claims for breach of contract and breach of the**

9                 **implied covenant of good faith and fair dealing are preempted**

10                **by ERISA.**

11  Plaintiffs allege claims for breach of contract and breach of the implied covenant of

12  good faith and fair dealing.  The alleged underlying contract is the Plan.  (Compl. (#1) ¶ 34).

13  Plaintiffs allege that NUMMI breached the contract embodied by the Plan by failing to protect

14  and insure Mr. Borton's interests in the Plan, appropriately invest Plan assets, and pay Ms.

15  Borton a lump sum pursuant to the domestic relations order.  Plaintiffs also allege that NUMMI

16  breached the implied covenant of good faith and fair dealing in the contract embodied by the

17  Plan.

18  Plaintiffs' could have brought these claims under section 502(a).  Section 502(a) allows

19  participants and beneficiaries to bring a civil action "to recover benefits due to him under the

20  terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to

21  future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Furthermore,

22  Plaintiffs' contract claims are not based on any independent legal duty.  Plaintiffs are seeking

23  damages for breach of duties created by an ERISA plan.  Plaintiffs' contract claims fall within

24  the scope of section 502(a) and are thus completely preempted.  Plaintiffs do not expressly

25  argue that these claims are not subject to preemption.  (*See* Pls.' Opp'n (#17) 19:9–21:7).

26  Therefore, ERISA preempts Plaintiffs' contract claims.

27         b.     **Plaintiffs' claims for fraud and negligent misrepresentation**

28                **are preempted by ERISA.**

8

1   Plaintiffs allege claims for negligent misrepresentation and fraud.  They assert that

2   NUMMI misrepresented to Mr. Borton that his assets in the Plan would be insured if he retired

3   and elected to be paid out of the Plan in installments.  In reliance on the representation, Mr.

4   Borton retired and elected installment payments.  (Compl. (#1) ¶¶ 44–45, 50–51).

5   This case involves an employee suing his employer regarding an ERISA plan.  This

6   relationship is one that ERISA "comprehensively regulates." *Ariz. State Carpenters*, 125 F.3d

7   at 723 (quoting *Castonguay*, 984 F.2d at 1521–22).  Plaintiffs' claims would provide an

8   alternate enforcement mechanism to protect plan and ERISA rights.  Misrepresentation claims

9   related to an ERISA plan are not absolutely preempted.  *See The Meadows v. Employers*

10  *Health Ins.*, 47 F.3d 1006, 1008 (9th Cir. 1995) (holding healthcare provider's claim for

11  misrepresentation regarding plan coverage when plan in fact no longer covered patient not

12  preempted).  However, Plaintiffs' claims may be brought under a theory of ERISA estoppel.

13  *See Marx v. Loral Corp.*, 87 F.3d 1049, 1056 (9th Cir. 1996). Thus, the claims are preempted.

14  Even if Plaintiffs could not raise their claims for misrepresentation under ERISA, the

15  lack of an ERISA remedy is not controlling.  In *Olson*, the plaintiff employee sued his employer

16  for misrepresentations about the level of benefits provided by his plan.  *Olson v. Gen.*

17  *Dynamics Corp.*, 960 F.2d 1418, 1419 (9th Cir. 1991).  The plaintiff made two arguments:  (1)

18  that the fraud claim did not relate to the plan, and (2) that because ERISA does not provide

19  for a civil cause of action for alleged oral misrepresentations, his fraud claim was not

20  preempted.  *Id.* at 1421.  With regards to the first argument, the Ninth Circuit held that the

21  fraud claim related to the employee benefit plan because the claim had a connection with the

22  plan.  *Id.* at 1422.  Moreover, the Ninth Circuit rejected the plaintiff's second argument

23  because "there is no reason to assume that Congress intended ERISA's preemptive reach to

24  be coextensive with the Act's civil remedial scheme." *Id.* at 1423.  Otherwise the federal

25  preemption scheme would be undermined.  *Id.*  Accordingly, ERISA preempted the fraud

26  claim.

27  Similarly, in *Davidian*, the plaintiff plan member sued his retirement plan, which is also

28  a relationship comprehensively regulated by ERISA.  *See Davidian v. S. Cal. Meat Cutters*

1    *Union & Food Employees Benefit Fund*, 859 F.2d 134, 134 (9th Cir. 1988).  Like Mr. Borton,

2    Davidian was induced to alter his position with respect to his retirement plan because of

3    certain misrepresentations made by the defendant.   However, his fraud claims were

4    preempted by ERISA.  *Id.* at 135.  Therefore, ERISA preempts Plaintiffs' claims for fraud and

5    negligent misrepresentation.

6                          **c.     Plaintiffs' claims for specific performance and injunctive relief
7                                  are preempted by ERISA.**

8          Plaintiffs' fifth and sixth claims simply request a court order requiring NUMMI to

9    immediately pay Ms. Borton all Mr. Borton's interests in the Plan and to protect the value of

10   Mr. Borton's interest in the Plan. (Compl. (#1) 56–59). Section 502(a) allows participants and

11   beneficiaries to bring a civil action  "(A) to enjoin any act or practice which violates any

12   provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate

13   equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter

14   or the terms of the plan." 29 U.S.C. § 1132(a)(3).  Plaintiffs' equitable claims are not based

15   on any independent legal duty.  Plaintiffs are seeking enforcement of duties allegedly owed

16   by NUMMI under an ERISA plan.  Furthermore, Plaintiffs do not expressly argue that these

17   claims are not subject to preemption.  (*See* Pls.' Opp'n (#17) 19:9–21:7).  Therefore, ERISA

18   preempts these claims.

19                          **d.     Plaintiffs' claim for unjust enrichment is not preempted by
20                                  ERISA.**

21         Plaintiffs' seventh claim is for unjust enrichment.  It is based on allegations that NUMMI

22   was unjustly enriched by Mr. Borton's contributions to the Plan.  (Compl. (#1) ¶¶ 61–62).

23   Though Mr. Borton made no actual payments to the Plan, as the Plan is unfunded, he did

24   contribute labor.  The Plan acted as a means to defer his compensation for the labor he

25   performed for NUMMI.  Since a claim for unjust enrichment seeks relief outside of any ERISA

26   plan or contract, it may not be brought under section 502(a).  Therefore, it is not completely

27   preempted.

28

                                              10

1
2
3
4
5
6
7

However, to find that NUMMI was unjustly enriched requires a finding that Mr. Borton's payments into the Plan were not governed by the Plan.  *See Leasepartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) (per curiam) ("An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement.").  Because Plaintiffs' claim for unjust enrichment will require interpretation of the Plan to determine its validity and whether it governs Mr. Borton's payments, it relates to an employee benefit plan.

8
9
10
11
12
13

But, an unjust enrichment claim for plan contributions does not conflict with the terms of a plan or with relevant provisions of ERISA.  Essentially, a plaintiff claiming unjust enrichment asserts that he made payments to a purported plan that for some reason was invalid or unenforceable.  Because the plan was invalid, he cannot bring an ERISA action to enforce the terms of the plan or the provisions of ERISA.  ERISA does not preempt Plaintiffs' claim for unjust enrichment.

14
15

### 2.   Administrative exhaustion

16
17
18
19
20
21
22
23

NUMMI argues that Plaintiffs' claims are not ripe because the Committee has not yet acted on the domestic relations order.  (Mot. to Dismiss (#10) 3:1–3, 9:14–10:9).  Plaintiffs argue that ERISA and the Plan do not govern the timeliness of the Committee's decision because Ms. Borton obtained a domestic relations order that supersedes Mr. Borton's interests in the Plan.  (Pls.' Opp'n (#17) 23:26–24:3).  Plaintiffs also argue that administrative exhaustion is unnecessary because the plan lacks reasonable claims procedures under section 503 of ERISA and the related regulations of the Department of Labor.  (*See* Pls.' Opp'n (#17) 16:12–18:13).

24
25
26
27
28

District courts may decline to entertain an ERISA action if the plaintiff has not exhausted a plan's internal administrative review procedures under a judicially-created prudential exhaustion requirement.  *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008).  Administrative exhaustion is unnecessary, however, if the plan lacks reasonable claims procedures under 29 C.F.R. § 2560.503-1(l).  *Vaught*, 546 F.3d at 627.

Section 503 of ERISA requires every employee benefit plan to provide adequate notice of denial of a claim and to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133.  The Department of Labor requires that every employee benefit plan establish and maintain "reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations."  29 C.F.R. § 2560.503-1(b).  In any regard, the plan administrator must act on a claim within 90 days and may extend its time to act another 90 days.  29 C.F.R. § 2560.503-1(f)(1).  If a plan fails to establish or follow reasonable claims procedures, any claimant is deemed to have exhausted his administrative remedies.  29 C.F.R. § 2560.503-1(l).

The Plan does not appear to contain any claims procedure.  (*See* Rest. of the NUMMI Executive Deferred Compensation Plan (Jan. 1, 2008), attached as Ex. 3 to Compl. (#1)).  NUMMI has not pointed to any claims procedure under the Plan.  Therefore, Plaintiffs must be deemed to have exhausted their administrative remedies.

### 3.    Proper defendant.

NUMMI argues that, as plan sponsor, it may not be sued in an ERISA civil action because the proper defendant is the Plan itself or the Committee, as the Plan administrator.  (Mot. to Dismiss (#10) 8:8–16).

Only plans or plan administrators may be sued under section 502(a)(1)(B) of ERISA.  *Everhart v. Allmerica Financial Life Ins. Co.*, 275 F.3d 751, 754 (9th Cir. 2001) (2-1).  However, there is no limit on who a plaintiff may sue under section 502(a)(3).  *Id.* at 754 n.3.  Section 502(a)(3) authorizes civil actions by participants or beneficiaries "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).

///

12

Because NUMMI has not shown that Plaintiffs could not bring an ERISA claim under section 502(a)(3), it is not clear that NUMMI is not a proper party.  Furthermore, it is not clear that NUMMI is not the administrator of the Plan.  NUMMI apparently administers the Plan through the Committee.  That NUMMI acts as an employer and indirectly administers the Plan does not make it an improper defendant.  *See Taft v. Equitable Life Assurance Society*, 9 F.3d 1469, 1470–74, (9th Cir. 1994) (finding no problems with ERISA suit against employer who acted as plan administrator even when a subdivision of the employer actually administered the plan), partially *abrogated on other grounds*, *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 973 (9th Cir. 2006).  In fact, NUMMI retains much direct control over the Plan and the Committee.  Finally, NUMMI is the party in interest as any payments made to Ms. Borton will come from its general funds.  Therefore, NUMMI is a proper defendant to Plaintiffs' suit.

### 4.      The Release

NUMMI argues that Plaintiffs' claims for fraud and negligent misrepresentation are barred by the release that Mr. Borton signed.  (Def.'s Reply (#6:10–23).  Plaintiffs argue that the release is ineffective because it was induced by misrepresentation and because Ms. Borton never agreed to release her claims.  (Pls.' Opp'n (#17) 22:18–23:14).

Plaintiffs do not allege that NUMMI ever made a misrepresentation to Ms. Borton.  The claims for fraud and misrepresentation are solely based on alleged misrepresentations to Mr. Borton.  Therefore, it should not matter that Ms. Borton did not sign the release.  Furthermore, both parties agree that the release is ineffective to claims that arose after its execution.

A release may be ineffective if induced by fraud or material misrepresentation.  *See Ingram Corp. v. J. Ray McDermott & Co., Inc.*, 698 F.2d 1295, 1314 (5th Cir. 1983); Restatement (Second) of Contract § 164 (1981).  Therefore, the Court cannot conclude at this stage that the release precludes Plaintiffs' claims for fraud and negligent misrepresentation.

///

///

1

2
3
### 5.    Justifiable reliance

NUMMI argues that Mr. Borton could not justifiably rely on the alleged oral representation that his interests in the Plan would be insured.  (Def.'s Reply (#21) 5:12–28).  Whether Plaintiffs assert a claim for negligent misrepresentation, fraud, or ERISA estoppel, they must prove justifiable reliance as an essential element.  *See Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996) (ERISA estoppel); *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004) (fraudulent inducement); *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) (negligent misrepresentation).

Though a clear statement in the Plan stating that no interests in the Plan are insured may negate Plaintiffs' justifiable reliance, no such statement exists.  The Plan clearly states that NUMMI may hold funds to pay Plan obligations in a third-party trust.  (Rest. of the NUMMI Executive Deferred Compensation Plan § 8.1 (Jan. 1, 2008), attached as Ex. 3 to Compl. (#1)).  The funds in the trust may be used to pay participants and beneficiaries under the Plan or to pay NUMMI's creditors if NUMMI becomes insolvent.  (*Id.* at §§ 8.1, 8.2).  Participants and beneficiaries have no right against NUMMI for payment under the Plan except as general creditors.  (*Id.*).

The statements above do not directly reference insurance of Plan assets, but it does state that the Plan is unfunded and that participants have no greater rights on insolvency than general creditors.  Making inferences in Plaintiffs' favor, the Court cannot determine at this stage that Mr. Borton did not justifiably rely on NUMMI's agents' oral statements.

### 6.    Damages

The parties seem to agree that Plaintiffs may not assert claims for compensatory and punitive damages under ERISA.  (*See* Mot. to Dismiss (#10) 9:3–12; Pls.' Opp'n (#17) 23:15–25; Def.'s Reply (#21) 6:24–7:3).  However, they also seem to agree that Plaintiffs may seek compensatory and punitive damages under their common law claims, should they survive.  (*See id.*).  Because Plaintiffs must proceed under either ERISA or a theory of unjust enrichment, their damages are limited to those available under either theory.  Thus, they are likely limited to their interests in the Plan or restitution.

### 7.    Committee discretion

NUMMI argues that the Committee has sole discretion to accelerate payments of the Plan benefits and therefore Plaintiffs are not entitled to a lump sum payment. (Mot. to Dismiss (#10) 10:10–15). Plaintiffs argue that the Committee has no discretion to not pay Ms. Borton a lump sum because of the domestic relations order. (Pls.' Opp'n (#17) 10:20–25; 14:12–16:5).

This dispute hinges on interpretation of the Plan. Two relevant parts of the Plan are at issue: the anti-alienation provisions and the acceleration provisions. Generally, under the Plan, a participant or beneficiary may not voluntarily or involuntarily alienate his interest in the Plan. (Rest. of the NUMMI Executive Deferred Compensation Plan § 8.2 (Jan. 1, 2008), attached as Ex. 3 to Compl. (#1)). However, the Committee will honor a domestic relations court order to the extent required by law. (*Id.*). Thus, it is clear that a domestic relations order may assign the participant's interest in the Plan to another despite the anti-alienation provision.

A plan participant may elect to receive payment of his plan interest in a lump sum or in yearly installments for five or ten years. (*Id.* at § 6.3). The participant makes this election when electing to defer compensation and may modify his election once to further defer distribution. (*Id.*). Otherwise, the plan participant's election of the time and manner of distribution is generally irrevocable. (*Id.*).

The participant may not subsequently change his election to accelerate payments. (*Id.* at § 6.3(d)). The Committee may, however, at its sole discretion, accelerate payments under specific circumstances. (*Id.*). One such circumstance is to make an accelerated payment to an individual other than the participant necessary to fulfill a domestic relations order. (*Id.* at § 6.3(d)(i)).

The domestic relations order assigns Mr. Borton's interests in the Plan to Ms. Borton as an alternate payee. (DRO 1:19–22, attached as Ex. 9 to Compl. (#1)). This clearly falls under the exception to the Plan's anti-alienation clause. Therefore, the Committee must assign all Mr. Borton's interests to Ms. Borton.

The domestic relations order also finds that Ms. Borton requires a "lump sum distribution" to "equalize division of the community property" and orders distribution "in a single lump sum following receipt of this DRO by the Plan Administrator." (*Id.* at 2:20–3:2). The domestic relations order also states that it shall not provide Ms. Borton "any type or form of benefit, or any option, not otherwise available under the Plan." (*Id.* at 2:23–26).

Whether the Committee still has discretion to accelerate payment is a difficult question. The Court cannot answer this question at this stage. Therefore, the Court cannot dismiss Plaintiffs' claims for immediate payment of Plan interests based on interpretation of the Plan and the domestic relations order.

### B.    Motion for Summary Judgment

NUMMI moves in the alternative for summary judgment. NUMMI has not provided any summary judgment-type evidence that would show an absence of a dispute regarding a material fact and NUMMI's entitlement to judgment as a matter of law. The evidence provided by NUMMI supplements Plaintiffs' story, but does not materially contradict it. Therefore, the Court will not treat NUMMI's motion to dismiss as a motion for summary judgment and will disregard NUMMI's exhibits.[1]

### C.    Leave to Amend

Plaintiffs ask for leave to amend. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But a district court may deny leave to amend when amendment is futile. *See Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087–88 (9th Cir. 2002). NUMMI has failed to show that amendment of Plaintiffs complaint to plead causes of action under ERISA, where appropriate, is futile. Plaintiffs may amend their complaint to plead their causes of action under ERISA. Therefore, the Court grants Plaintiffs leave to amend their complaint.

---

[1] The only new facts that NUMMI attaches evidence in support of are that Mr. Borton enrolled in the Plan in 1995, at which time he elected to receive his payment from the plan in annual installments over ten years, (Fong Decl. ¶ 5, attached as Ex. 1 to Mot. to Dismiss (#10)), and that the Committee received the domestic relations order on or about February April 7, 2010. (*Id.* at ¶ 6).

**D.     Motion for Preliminary Injunction**

NUMMI also seek a preliminary injunction ordering NUMMI to act in accordance with the domestic relations order and the Plan and pay Ms. Borton all Mr. Borton's interests in the Plan immediately in a lump sum.  Alternatively, Plaintiffs ask for an order requiring NUMMI to place the money at issue in escrow with the Court.  (Mot. for Prelim. Inj. (#3) 1:20–2:2).  Essentially, Plaintiffs seek to elevate their status as general creditors to that of secured creditors.  Though the Court is convinced that Plaintiffs may have a good cause of action, it is not prepared to grant the requested preliminary relief.

**1.     Plaintiffs have not shown a likelihood of success on the merits under the high standard required for a mandatory injunction.**

As noted above, Plaintiffs' contract claims, misrepresentation claims, and requests for equitable remedies are preempted by ERISA.  Even ignoring ERISA preemption, Plaintiffs' claims are questionable on the merits.  The Plan is susceptible to an interpretation that allows the Committee to exercise its discretion to not pay Ms. Borton in a lump sum.  Therefore, Plaintiffs have failed to establish a likelihood of success on the merits for these claims.

Plaintiffs' claim for unjust enrichment survives NUMMI's motion to dismiss.  But, this claim cannot support the equitable relief Plaintiffs seek.  If Plaintiffs successfully prove unjust enrichment—which is unlikely given the clearly express agreement embodied in the Plan—they may recover their contributions to the Plan.  This claim will not allow recovery of Mr. Borton's entire Plan account in a lump sum.

Plaintiffs' request for an injunction disbursing or transferring Plan assets must be made under ERISA.  Since Plaintiffs have not alleged ERISA claims, they have failed to show a likelihood of success on the merits.  Furthermore, because Plaintiffs seek a mandatory injunction, their burden is even greater.  They have failed to meet this burden.

**2.     Plaintiffs have not established a likelihood of irreparable harm.**

Plaintiffs only seek monetary relief.  Typically, monetary injury is not considered irreparable. *See Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851 (9th Cir. 2009).

However, this presumption does not exist where no damages can be obtained. *Id*. at 842.

Plaintiffs argue that NUMMI is in danger of bankruptcy and its ability to satisfy a money judgment is doubtful. However, Plaintiffs' fears appear to be based on mere news reports and nothing more. Furthermore, Plaintiffs are not likely entitled to any more secure status than that of general creditors under the Plan. Plaintiffs have not shown that they are *likely* to suffer irreparable harm absent a preliminary injunction.

### 3. The balance of the equities favors Plaintiffs and the public interest favors neither party.

NUMMI does not oppose Plaintiffs' motion for a preliminary injunction on the factors of the balancing the equities or the public interest. Plaintiffs argue that the balance of hardships favor them because the money in the Plan is clearly theirs, whether they are owed it now or in installment payments, and because NUMMI allegedly committed fraud and negligent misrepresentation. Plaintiffs do not address the public interest. These factors appear to favor neither party. Because the Plan was unfunded, there is no specific money that Plaintiffs' are entitled to and at risk of losing. Plaintiffs are only clearly entitled to general creditor status. Whatever harm Plaintiffs will suffer by the risk of NUMMI's insolvency is mitigated by the harm to NUMMI of requiring immediate payment.

///

///

///

///

///

///

///

///

18

1   **IV.   CONCLUSION**

2        Accordingly, IT IS ORDERED that Plaintiffs' Motion for Preliminary Injunction (#3) is

3   DENIED.

4        IT IS FURTHER ORDERED that NUMMI's Motion to Dismiss (#10) is GRANTED IN

5   PART AND DENIED IN PART.

6        IT IS FURTHER ORDERED that Plaintiffs' First, Second, Third, Fourth, Fifth, and Sixth

7   Claims for Relief are DISMISSED WITH LEAVE TO AMEND.

8

9        IT IS SO ORDERED.

10       DATED: This 16th day of August, 2010.

11

12

13

14

15       Robert C. Jones
         UNITED STATES DISTRICT JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28